NOTICE

Decision filed 02/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250648-U

NO. 5-25-0648

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CHRISTINA ELLIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | De Witt County. |
| | ) | |
| v. | ) | No. 23-LA-7 |
| | ) | |
| ROBBIN HENDERSON, | ) | Honorable |
| | ) | Karle E. Koritz, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the summary judgment order, as there are no genuine issues of material fact establishing that defendant negligently operated her vehicle when it made contact with plaintiff while driving on a highway at night.

¶ 2    Plaintiff Christina Ellis filed a complaint against defendant Robbin Henderson, alleging that she was a pedestrian walking near a highway in De Witt County, Illinois, when she was struck by a vehicle driven by defendant. Plaintiff alleged that defendant was negligent in the operation of her vehicle and sought recovery for personal injury damages. Following discovery, defendant filed a motion for summary judgment, asserting that there were no genuine issues of material fact concerning duty, breach of duty, and proximate cause, and that plaintiff's contributory negligence barred any recovery. The circuit court concluded that there were no genuine issues of material fact and granted summary judgment in favor of defendant. For the reasons outlined below, we affirm

1

the summary judgment order as the record supports the circuit court's determination that defendant did not breach any duty to plaintiff.

¶ 3                                    I. BACKGROUND

¶ 4      Our recitation of the facts includes only those necessary to resolve this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties. On March 22, 2023, plaintiff Christina Ellis filed a two-count complaint against defendant Robbin Henderson. Count I asserted a cause of action in common law negligence, and count II asserted that defendant's conduct amounted to "recklessness and wantonness." Plaintiff later filed a first amended complaint (complaint) that incorporated the same counts as the original complaint. Defendant filed a combined answer to count I and motion to dismiss count II of the complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2020). The circuit court granted the motion and dismissed count II without leave to replead.

¶ 5      Plaintiff stated that on September 24, 2021, she was walking near US Highway 51 (US 51) just before Wapella, in De Witt County, Illinois. Plaintiff alleged that defendant was operating a motor vehicle on US 51 and caused her vehicle to impact Plaintiff. Plaintiff asserted that defendant owed her a duty of reasonable care in the operation of her vehicle and that defendant was negligent by failing to exercise ordinary care, failing to keep a proper look out, failing to maintain proper control of her vehicle, failing to yield to plaintiff, and otherwise was negligent in disregarding plaintiff's safety. Plaintiff alleged that as a direct and proximate cause of defendant's negligence, plaintiff sustained personal injuries, pain, suffering, and other damages.

¶ 6      In her answer, defendant admitted that she owed a duty of reasonable care to plaintiff in the operation of her vehicle but denied that she breached that duty and denied that plaintiff's alleged injuries and damages were proximately caused by defendant's negligence. Defendant also

2

filed affirmative defenses asserting that plaintiff's contributory negligence barred or diminished any recovery. She alleged that plaintiff failed to exercise reasonable care by walking in, or in close proximity to, lanes designated for vehicular travel without protective barricades, in an area where pedestrians would not be expected to walk, during nighttime conditions without overhead lighting, and in rainy weather. Defendant further asserted that plaintiff failed to make herself visible to approaching vehicles in any manner. Defendant asserted that plaintiff was under the influence of alcohol and drugs when she suddenly entered the path of defendant's vehicle. The affirmative defenses asserted various other alleged negligent acts attributable to plaintiff.

¶ 7 On June 9, 2025, defendant filed a motion for summary judgment. Defendant argued that the uncontested facts established that she owed no duty to an unforeseeable plaintiff, that plaintiff cannot present evidence that defendant breached a duty, and that plaintiff was at least 51% at fault as a matter of law. The motion for summary judgment attached various exhibits, including deposition transcripts of plaintiff, Logan Moore, Officer Adam Akeman, and John Karr; Officer Akeman's incident report and photographs; Officer Akeman's affidavit and recording of his body camera worn during his investigation[1]; and plaintiff's answers to interrogatories and medical records. Plaintiff filed a response in opposition to the motion, asserting that genuine issues of material fact precluded summary judgment on all issues raised in the motion. Plaintiff attached various exhibits to her response, including exhibits that were attached to the motion as referenced above; defendant's answers to interrogatories; the deposition transcript and report of Joshua B. Macht, M.D.; defendant's answers to plaintiff's request to admit facts; and defendant's deposition transcript.

---

[1]The body camera recording was not made a part of the record on appeal.

¶ 8    At her deposition, plaintiff testified that prior to the incident, she remembered being at her friend Jen Terry's residence, returning home, and then going to a bar. Plaintiff acknowledged, based on her answers to interrogatories, that she consumed alcohol and recreational drugs prior to the incident. She further acknowledged that her medical records indicated her use of methamphetamines and cocaine.

¶ 9    Plaintiff testified that she departed from Terry's and drove home; however, she did not recollect the time of day. She did not remember her activities upon returning home but stated that she and her boyfriend, Mark Stone, then went to Breakers II, a bar in Wapella. She did not recall entering the bar but vaguely remembered being there. She ordered a double shot of Rumple Minze and a cranapple-and-cranberry cocktail. She remembered consuming the double shot and part of her beverage. She recalled being cut off by the bartender, but had no memory of leaving the bar.

¶ 10    Plaintiff claimed not remembering whether she consumed alcohol or drugs after leaving the bar. She also did not recall walking along US 51 or the specific location where she was struck by defendant's vehicle. Her intention was to walk home to Clinton, though she had not walked that route before. Plaintiff was dressed in capris, a gray-and-white shirt, and flip-flops. She stated that she knew this because the hospital had returned these items to her. She did not recall whether she was wearing reflective clothing or carrying a flashlight. She did not remember any details of the walk prior to being struck by defendant's vehicle, including the direction she was facing or her proximity to the traffic lanes. She could not recall if she was walking on the shoulder of the road or within the roadway itself. Plaintiff was unable to specify which part of the shoulder she was on or if she had crossed the fog line. Considering the amount of alcohol and drugs she consumed, plaintiff was uncertain whether she could walk a straight line, whether her judgment of distances was impaired, or whether her balance was affected. She was unaware whether defendant exceeded

4

the speed limit or crossed the fog line. She did not remember taking any measures to ensure her own safety.

¶ 11    Logan Moore, the bartender at Breakers II in Wapella, testified that he completed a training program, which instructed him on recognizing signs of intoxication. He was acquainted with plaintiff prior to September 24, 2021. Regarding the night in question, Moore testified that plaintiff arrived between 9:00 and 10:00 p.m. accompanied by "Mark Stouden [*sic*]". Moore recalled that plaintiff ordered a Rumple Minze. He stated that when he served the Rumple Minze shot to plaintiff, she was already intoxicated. Moore further recalled that plaintiff returned for a second shot; however, he denied her service due to her slurred speech and aggressive demeanor. To Moore, plaintiff appeared intoxicated because she was fighting, becoming upset, and her gait was slightly unsteady. Around 11:00 p.m., Moore informed plaintiff that he could no longer serve her and plaintiff stormed out of the bar.

¶ 12    Officer Adam Akeman, a detective with the De Witt County Sheriff's Office, testified that on September 24, 2021, he was the responding officer and prepared an incident report to document his investigation. Officer Akeman testified that he had difficulty seeing clearly that night due to the rain. He proceeded to a camper owned by John Karr who had called 911 and observed plaintiff lying on the ground. He conducted an inquiry with her before EMS personnel arrived. After plaintiff departed in the ambulance, he proceeded to Casey's General Store in Wapella to meet defendant. Upon his arrival, Deputy Nixon and defendant were present. He engaged in a conversation with defendant, who stated that she recalled hitting something but was uncertain of what it was. Upon further inquiry, she said it appeared to be a person standing by the side of the road. He testified that "when she heard it hit, she said that she looked over and she thought she saw a person standing there. And then she continued to Casey's to call, call our office." The officer

5

described defendant's demeanor as visibly flustered, as she seemed uncertain about what she had hit, which prompted her to stop. He further stated that Casey's General Store is approximately a quarter to a half mile from the location of the accident.

¶ 13    Office Akeman testified that he next went to the area where plaintiff had been walking to see if he could find anything that might help his investigation. He located a pair of flip-flop sandals and some plastic debris from defendant's vehicle which he photographed. Officer Akeman further stated that the passenger side mirror of defendant's vehicle was damaged, hanging, and there were additional scratches along the side of defendant's car which he photographed. Officer Akeman photographed the scene of the incident which he described as an area not equipped with street lighting. He stated that he could not determine whether plaintiff's feet were where the sandals were found due to the presence of a "pretty wide gap" between the two. The posted speed limit in that area was 65 miles per hour. Office Akeman testified that based on his conversations with defendant, his report documented that defendant was in her lane of travel at all times. He further testified that plaintiff appeared intoxicated, as evidenced by the odor, slurred speech, and her admission to having been drinking.

¶ 14    John Karr testified that on the night in question, plaintiff was beating the side of his camper, and he opened the door to find her babbling incoherently. He stated that he "called the County and told them that somebody was obviously drinking and that I didn't know why they were there and that they needed to have somebody come check on her." He was acquainted with plaintiff prior to that evening, as she was a local bartender. While speaking with the county regarding an ambulance, plaintiff expressed that she believed she had been struck by a vehicle. He further testified that upon plaintiff's arrival at his camper, he believed she was intoxicated, although he stated that he had "no actual proof" of her intoxication.

6

¶ 15    Defendant testified at her deposition that on the day of the incident, she was at a dinner gathering at a friend's residence in Clinton and departed around 11:00 p.m., en route to her daughter's residence in Wapella. She was operating a Chrysler Pacifica and traveling north along US 51, which she described as a four-lane highway. The speed limit was 65 miles per hour. It was raining, and defendant's windshield wipers were activated. Defendant was traveling in the right lane, with one vehicle to her left and two behind her; none of these vehicles stopped following the incident. She affirmed that nothing obstructed her vision or prevented her from perceiving objects or conditions in the roadway.

¶ 16    Defendant testified that, unexpectedly, she heard a sound akin to a clapping noise of something striking the side of her vehicle. She glanced over and saw a "shadow" pass her passenger-side window and saw nothing else. Defendant testified that she continued her journey until reaching Casey's, which she knew was the only illuminated establishment nearby. She had contacted her daughter to ask whether she knew anyone on the police force who could meet her at Casey's, reasoning that her daughter, being from Wapella, might know local residents. Her daughter informed her that her husband would call 911. Defendant stated that she did not stop on the highway because she was a woman and it was dark and raining. She further explained that she did not want to pull over because she did not think it was safe. She knew Casey's was ahead and knew it had a parking lot she could use.

¶ 17    Defendant was requested to read a section of the police report, and she denied telling the responding officer that after something hit her front passenger side, she looked over and thought it may be a person. She testified that she did not know what hit her vehicle at the time.

¶ 18    The motion for summary judgment was called for hearing on July 25, 2025. After hearing arguments from counsel, the circuit court orally pronounced its decision. The circuit court noted

7

that plaintiff admitted to being intoxicated and conceded that she was cut off at Breakers II. It further stated that plaintiff acknowledged the consumption of alcohol and recreational drugs. The circuit court observed that a drug test conducted 1.5 hours later revealed a blood alcohol concentration of .15, which "statutorily is well beyond the presumptive amount for driving under the influence." The circuit court also noted that Karr observed plaintiff to appear intoxicated. Additionally, the circuit court mentioned that cocaine and methamphetamine were detected in plaintiff's system.

¶ 19    The circuit court stated that it was uncontested that plaintiff departed from the bar in Wapella and proceeded southbound along the northbound lane of a four-lane divided highway. It further stated that the incident location was inadequately illuminated and dark, and that it occurred near midnight. The circuit court observed that it was raining and visibility was low, as corroborated by the officer in his deposition. The circuit court noted that defendant testified she was driving within the posted speed limit of 65 miles per hour. It further observed that it was undisputed that plaintiff was not wearing reflective clothing and lacked a flashlight. The circuit court also noted that "Plaintiff admitted she could not testify to a number of material facts including where she was at the point of impact. She had no recollection of walking down the highway, which direction she was traveling in, or whether she was in the road or the shoulder." The circuit court stated that defendant has been consistent that she was within the northern lane of US 51. It noted that the critical fact concerning duty, breach of duty, and contributory negligence was the location of the impact relative to the roadway. Additionally, the circuit court observed that it was not reasonably foreseeable for plaintiff to be within the lane of travel on a four-lane divided highway. Furthermore, the facts presented to the circuit court did not indicate that plaintiff was struck on the shoulder. It stated that the circumstantial evidence of flip-flops on the shoulder has "no value" as

8

to plaintiff's location when she was struck. The circuit court observed that there was no "sufficient evidence whatsoever" for plaintiff to meet her burden of proof that the point of impact was on the shoulder or that defendant departed from her lane of travel. Consequently, the circuit court found that plaintiff was unable to demonstrate that defendant breached a duty of care. The circuit court granted the motion for summary judgment. A written order was entered on August 5, 2025, and on August 8, 2025, plaintiff filed the present appeal.

¶ 20                                    II. ANALYSIS

¶ 21    Plaintiff raises four issues on appeal. First, she asserts that the circuit court's factual determinations were improper and not supported by Illinois law. Second, she contends that defendant had a duty to remain within her lane and to exercise due care to prevent striking pedestrians, and therefore, the circuit court's conclusion that defendant did not owe a duty to plaintiff was erroneous. Third, plaintiff argues that the circuit court erred when it concluded there was no breach of duty based on its finding that defendant owed no duty. Finally, plaintiff claims that the circuit court erred in addressing the issue of comparative fault at the summary judgment stage. For the reasons provided, we affirm the circuit court's summary judgment order as we find there is no genuine issue of material fact to establish that defendant breached a duty to plaintiff under the facts and circumstances of this case.

¶ 22    Summary judgment should be granted if the pleadings, depositions, and admissions on file, together with any affidavits, establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2024). Summary judgment is intended to determine whether triable issues of fact exist and "is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact

9

and that the movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

¶ 23    The Illinois Supreme Court has long recognized that the granting of summary judgment is a drastic method of disposing of a case that should not be employed unless there is no issue of material fact and it is free from doubt that the movant is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). "The trial court's summary judgment may be affirmed on any basis appearing in the record whether or not the court relied on that basis or its reasoning was correct." *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). "Appellate review of a trial court's grant of summary judgment is *de novo*," and reversal will occur only if a genuine issue of material fact is found to exist. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005).

¶ 24    Plaintiff's complaint against defendant was grounded in negligence. "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). "[W]hether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues." *Id.* "Although a plaintiff need not prove his entire case at the summary judgment stage, he must introduce evidence that would support a finding in his favor [on the element of breach]." *Payne v. Mroz*, 259 Ill. App. 3d 399, 403 (1994). The question of breach cannot be sent to a jury where the plaintiff has wholly failed to produce "evidence" of breach. See *Neimiec v. Roels*, 244 Ill. App. 3d 275, 278 (1993) (defendant motorist entitled to summary judgment where

no evidence indicated that she breached her duty of care to pedestrian, who had no memory of accident).

¶ 25    We begin by examining the uncontested facts in this matter. The incident occurred after 11:30 p.m., in dark, rainy conditions. Plaintiff was intoxicated and had methamphetamine and cocaine in her system. Plaintiff was walking along a four-lane highway with a posted speed limit of 65 miles per hour, without reflective clothing or an illuminated flashlight. Defendant was operating her vehicle in her lane of traffic at or below the posted speed limit, with windshield wipers engaged and headlights on at all relevant times. Plaintiff had no memory of where she was walking at the time she was struck by defendant's vehicle, whether on the shoulder or in the roadway. There were no independent witnesses, and only defendant was able to testify as to what transpired. Defendant never saw plaintiff before her vehicle struck plaintiff. It was only after she heard a noise that sounded like a clap that defendant realized her vehicle made contact with someone or something. There is no evidence that defendant's vehicle ever left its lane of travel.

¶ 26    Plaintiff argues that the post-occurrence evidence of her flip-flops and the debris from defendant's vehicle in the shoulder are circumstantial evidence of her location at the time she was struck, and thus she must have been on the shoulder at the time. "Negligence may be established by using either direct or circumstantial evidence." *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1072 (1994). However, facts "will not be established from circumstantial evidence where more than one conclusion can be drawn." *Majetich v. P.T. Ferro Const. Co.*, 389 Ill. App. 3d 220, 224—25 (2009). The post-occurrence location of plaintiff's flip-flops does not lead to the sole conclusion that plaintiff was standing or walking on the shoulder when she was struck by defendant's vehicle. Rather, it is equally plausible that her flip-flops came to rest in that location after she was struck or that she had removed the flip-flops prior to or after she was struck. The

11

same is true of the post-occurrence location of the debris from defendant's vehicle. While circumstantial evidence may raise a genuine issue of material fact, speculative evidence will not withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 27     Plaintiff further contends that defendant's conduct following the collision "suggests consciousness of guilt." Defendant acknowledged that she was aware that her vehicle struck something or someone. However, she only speculated that it might have been a person and continued to drive a short distance, explaining that it was dark on a highway, that she did not feel it was safe to pull over, and that a lit gas station was just ahead. We are unable to find that defendant's post-occurrence uncertainty as to what her vehicle contacted creates a genuine issue of material fact.

¶ 28     Plaintiff asserts that defendant's uncertainty as to whether she was on the phone at the time of the incident supports an inference that she was distracted, citing defendant's answer to interrogatories, wherein she stated, "Defendant talked with her daughter on the Bluetooth speaker around the time of the occurrence but does not recall if it was prior to the incident." However, this answer does not constitute an admission that defendant was distracted when her vehicle made contact with plaintiff. Once again, plaintiff points to conjecture and speculation in an effort to raise a genuine issue of material fact where none exists.

¶ 29     "There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 44. Here, the record demonstrates that defendant exercised reasonable care in her driving on the night in question and had no opportunity to observe or take any action to prevent her vehicle from making contact with plaintiff. Of significance, the uncontroverted evidence is that defendant struck plaintiff while

driving within her lane of travel. The circumstantial evidence relied upon by plaintiff to substantiate her claims amounts to conjecture and speculation. Furthermore, plaintiff has not provided any evidence to demonstrate that defendant could have seen and avoided striking plaintiff. Consequently, the undisputed facts support the circuit court's finding that defendant did not breach her duty of care toward plaintiff. Accordingly, we find the circuit court did not err in granting defendant's motion for summary judgment.

¶ 30                              III. CONCLUSION

¶ 31    Based on the foregoing, we affirm the De Witt County Circuit Court's order granting summary judgment in favor of defendant.

¶ 32    Affirmed.